The next case today, number 231768, United States, Xavier O. Maldonado-Negroni. Will counsel for the appellant please introduce yourself on the record to begin? Good morning, and may it please the court. I am Assistant Federal Public Defender Samuel Carrion, and I represent the appellant, Xavier Maldonado-Negroni. With the court's permission, I'd like to reserve two minutes for rebuttal. You may. The district court in this case committed three significant errors. First, it determined that there was a grade A violation of supervised release to miscalculate the guideline range. Second, it failed to explain a massive 26-month upwardly variant sentence, particularly where Mr. Maldonado had been sentenced to a six-year prison term in the Commonwealth of Puerto Rico for the same offense conduct that underlied the revocation. Lastly, the district court did not clarify whether it had relied on allegations that Mr. Maldonado had engaged in drug trafficking during a prior supervised release term. Now, turning to the first point, which was the miscalculation, the Supreme Court has noted that in most cases, a guidelines error will result in prejudice, will result in affecting the sentence. And what the government would have to do here is show that this error was harmless, and I submit that the government cannot do so. If we look at what this court has required to show harmless error, there's a 2017 case Taylor in which it requires a clear statement in the record that the guidelines did not affect the sentence. Now, in this case, to be sure, there was a statement from the district court, but context matters. The statement, and this is on 101 of the appendix, there was a question from the prosecutor as to whether or not the district court would have sentenced Mr. Maldonado to the statutory maximum sentence regardless of whether this was a grade A or a grade B. And what we have is a response that's very terse, it's very conclusory, it's yes. In response to your question, the answer is yes. That's the sentence I would have imposed. And that colloquy came after the judge had announced his sentence, is that correct? That's correct. It had come after the judge had announced his sentence, and it was at the prompting of the prosecutor's question. And I think there's an implicit acknowledgment that the rationale that was provided up to that point would have been insufficient for the court to justify this sentence irrespective of what the guidelines was. And I believe that's why the prosecutor tried to inoculate that pronouncement by posing that question. But in similar cases, and specifically Taylor is on point with this, there was a prosecutor who had asked the court, the sentencing court in Taylor, would you have applied this sentence regardless of what the guidelines was? I believe in that case, it was a career offender designation. And the court said that it would have. And that was insufficient to find harmlessness. Why? Well, it was insufficient because it's not clear enough. And I think this is very similar to cases, to other circuits, for example, the second, the third, I believe the fifth, and the tenth, which we cite in our brief at pages, AB 37 to 40 of our brief, in which these type of statements are insufficient to find harmlessness. Specifically a case from the second circuit says that a district court cannot insulate its sentence from our review by commenting that the guidelines made no difference to its determination when the record indicates that it did. And in this case, if we look at the record, there's quite a bit of colloquy between defense counsel and the district court about what grade of violation this, in fact, was. And to be clear, it was a violation of. This is the one thing that puzzles me with the case law, which is I understand the idea we're trying to figure out whether the guidelines would have made a difference or not. But then when the judge says, well, with respect to the guideline issue that's being fought over, is it because the guidelines changed if it's grade A or not, right? That's right. Yeah, so with respect to that issue, Ben asked, OK, assume now it would be the guideline range if it was grade A or grade whatever. And the judge says, I'd come to the same sentence. What's missing? What are we not getting from the judge that we should be concerned that we're not getting? So I think that when we look at the cases that deal with these type of statements, there's a couple of things that the court could have done but didn't. For example, the court could have went through the analysis of if this was a grade B, which would have corresponded to a 4 to 10-month range, this is how I'm going to get to the 36-month statutory sentence. I'm going to entertain the possibility. I see. So the idea is there's just nothing in the record that if it was 4 to 10 months explains how he got to as high a number as he got. All the explanation makes more sense if he's starting with the higher grade. But if it was a lower grade, there's just not enough in the record that could lead us to be confident that when he says I'd give the same thing, we have any explanation of why that would be. Is that the idea? I think that's part of it. And to be clear, even if it was a grade A, at the top end, this would have been an 18-month sentence based on a CHC, a criminal history category of one. It still would be a significant sentence. But this is an even longer journey to get there. You know, we do, you can't just focus on this colicly. Obviously, you have to look at the entire record and everything that transpired at the sentencing. It's very clear that the judge is really troubled by this very, as he would see it, very ugly domestic violence incident in which the woman was badly injured. This all took place in front of a four-year, excuse me, a two-year-old child. And so, one could draw an inference that given that focus on the seriousness of this incident that it really would not make a difference to the court, whether it was a grade A or grade B violation. It was determined to impose the maximum available sentence, which was three years. I mean, we do have to look at all of that, don't we, in deciding how prejudicial this skyline error was? Yes, Your Honor. Certainly, the court can look at what the record allows to be fairly inferred from what happened here. But I think it's one thing to infer that a variant sentence would be appropriate. It's another to make the inferential leap that the top statutory maximum sentence is what is appropriate. And I think that's the problem, particularly where we have seven pages of transcript of the sentencing hearing with the sentencing court going back and forth with the defense counsel about whether or not this was grade A and grade B to say that this was untethered from the guidelines. For example, in Tavares, which I believe was a 2013 case, the district court threw the guidelines out the window and said so. Well, even under either permutation, this is where I'm going to be. But did that and did that analysis after a colloquy about what sentencing enhancements would have been applied? Here, we just don't have that. And what we do have is- Do we have anything where the sentencing judge says, I would like to give the statutory maximum? Well, there's some talk. This is on the most of the colloquies on 99, the pronouncement is on 99 of the appendix. And what the judge says is after taking a recess, he comes back and he says, for the reasons I referred to earlier, the record reflects a grade A violation. Then he goes into essentially a recitation or rehearsal of some of the facts that were present in this case. But quite literally, the grade A designation was top of mind. And so he doesn't, and to answer your question, Your Honor, he does say that a variant sentence is appropriate. But I don't glean from what he says that 36 months was the only sentence that Mr. Maldonado could have gotten under any circumstance. And that's essentially where the harm comes from in this case. And this also brings me to my second point, which is that there was a failure to adequately explain the sentence because if the district court was operating under the misapprehension that this was a, an 18 month top of range guideline, then the journey to get to 36 months. And I see that I'm out of time. You didn't finish. Yep. The 36 month while significance two times is certainly not what it would have been if it was a four to 10 month, which would have been over three and a half times as long. And so maybe the district court's rationale would have been more robust had the proper guideline range been accounted for and been calculated. So on this record, I think the court in line with Taylor and in line with some of the other circuits that I, that I've mentioned should rule that this, this error was not harmless. Vacate the sentence and remand. Thank you. Thank you. No, counsel, I, maybe you were going to address this. Did you reserve time for rebuttal? Yes, I did, Your Honor. Okay. I would like to hear, well, I'll ask you right now. This, this, this argument that, that this is a supervised release violation, the focus should not be on punishment to the extent that it was that, I mean, this sentence would be consecutive to a, a six year Commonwealth sentence. Is that correct? That's right. Your Honor. I gather it's your, your position. And I think there is some support for this, that, that dealt with punishment. Here, the issue is more breach of trust and inability to comply with the requirements of supervised release and by imposing this three year sentence, the court was in effect punishing him again, rather than focusing on the breach of trust issue. I gather that is your position. Is that correct? Yes. And that was in line with the position below. There was a concern from defense counsel that the breach of trust argument that was being put forth by the prosecution was really a Trojan horse for punishment. And a lot of these cases in, in the revocation context don't have a collateral state sentence attached to it. But is your, is your position that punishment and the severity of the crime, which, which results in the class A or class B, that, that's just irrelevant. You can't even consider that in, in deciding what the punishment should be for the supervised release violation? Well, certainly this court has said that punishment is a, is a, is a consideration that can be factored in. Okay. It's not enumerated in 3583E, the supervised release statute, but it's not also something that the court can't consider, but it should. That issue is pending at this revocation. Asteris. Yes, Your Honor. So that's, that's an issue that's pending before the Supreme Court. But, but even so, even if it is considered, it should be balanced against what we have here. And then the policy statement of the guideline says as much that the court that's in the best position to met out punishment, so to speak, would be the sentencing court that's presiding over the new criminal conduct. And that was the argument that was presented below. Great. Thank you. Thank you. Thank you, counsel. We'll turn you for Rappalee. Please come up and introduce yourself on the record to begin. I'm Nori Yars, AUSA Juan Carlos Reyes on behalf of the United States. May I please the court?  Your Honors, in this case, the record shows that the error in calculating the advisory guideline range was harmless. As Judge Pedro Delgado explicitly noted at the hearing, he would have imposed the same sentence regardless of whether it was a grade A or a grade B violation. This court has held in numerous cases, we cited some of them in our brief, including United States v. Ahmed, United States v. Ouellette, United States v. Tavares as examples that when the district court made clear that it would have imposed the same sentence regardless of the guidelines, any alleged error in calculating the guideline range is harmless. That phrase, regardless of the guidelines, is a little bit ambiguous. So one thought is, if we know the judge is interested in the statutory maximum and isn't thinking about guideline ranges at all, it's clear, I think, under our precedent that we treat that statement as rendering harmless any guidelines error because we can't see how it would have affected things. It's not clear to me that that language means that when we know the judge was focused on the guidelines, that when it says, under the guidelines, it wouldn't make a difference if it was grade A or grade B, that it's harmless when you just say that and don't offer any explanation of how under the guidelines you would get to as high a sentence as you would if the guideline range was different. The record here, Your Honor, contains such an explanation as this court has repeatedly found a district court's reasoning may be inferred by comparing what the parties argued with what the court did and also, of course, Was anyone arguing for this higher range that he settled on? Yes, Your Honor. The government, from the very beginning, in its sentencing memorandum, which contained the government's reasoning for a 36-month sentence, explicitly asked the court to Based on it being a grade A violation? In the sentencing memorandum, the government did not explain whether it was a grade A or grade B because it was not material to the government's reasoning. Would the government, in its reasoning, say, we want the 36-month sentence because, essentially, even if it was a grade B, that's what's warranted? Yes, Your Honor, throughout the sentencing hearing. So then why, if that was the rationale the district court was relying on, was it so focused on determining whether it was a grade A or a grade B violation? Your Honor, the defense would, in their reply brief, they argued that if the guideline range were truly irrelevant, the court would not have taken such care to resolve it. And I think that Your Honor is going to that argument. Yeah. But that's simply not correct because failure to calculate the guideline range is an error in and of itself as this court found in Tavares. So if the court, if the district judge, Pedro Delgado, had said, oh, the guidelines are not material to my case, I'm not going to even bother to calculate them, that would have been an error in and of itself. So the court had to calculate. That may be true, but as a consequence of that, the record might also be ambiguous as to whether, despite the government's sentencing memorandum saying, don't worry about the guideline range, give the statutory max. That was not the defendant's position. So is there any indication the district court was of the view that the guideline range was irrelevant and that what mattered was the statutory max, which is a different point, I think, than whether it simply says, under the guidelines, it wouldn't matter to me if it's grade A or grade B. Yes, Your Honor, there's record evidence to that effect. First of all, when actually explaining its sentence, the district court didn't even mention the guideline range. That's first. Second, when explaining the sentence, the court made reference to the government's reasoning. It resolved the grade. It did resolve, but it never said. It resolved it before it started its explanation. Correct, Your Honor. But it never said, it never talked about four to ten months when explaining its sentence, which was the applicable guideline range. And by the way, the defense has not argued that that was an error. So arguing that that was an error would now be waived because they haven't argued that. The point is that the court did not place emphasis on the guideline because it did not matter to the court's reasoning. Another example that I was going to mention is that when the court explained its reason, the court said that it was not following the defense's request, and it specifically spoke about what was the request, 12 months. And it said the government summarized the problems that the defendant encounters. And there, the court is making reference to the government's argument. But 12, vis-a-vis a grade, what was the range if it was a grade A violation? If it was a grade A, it would have been 12 to 18. Yeah, so 12 months would be at the low end of the range for a grade A. And given the seriousness of the crime, you could see why a district court would say that doesn't make any sense. Your Honor, I would refer this court to pages 78 through 79 of the appendix, where the prosecutor explicitly told the court that the reason why this is a grade B violation is because of the categorical approach, which doesn't look at what the defendant actually did. So he's getting treated at, if he were a grade B, and actually the prosecutor said that the categorical approach leads to unexpected results. And this court found, basically said as much in Menendez-Montalvo when it said that the law in this area is counterintuitive, used those precise words. But the relevant point is for the ranges. The ranges are set with an understanding of the categorical approach, right? Yes, Your Honor. The point of the commission is to guide the judge so you know that you're giving a sentence that promotes uniformity in sentencing, so that defendants are sentenced in accord with the range that fits with the crime that they did, roughly speaking. So with respect to that question, the relevant issue for the judge is do I want to depart from that or vary from that or not? And we don't really have an explanation of why there's this high a variance if it's a variance from the range that would be, what, 4 to 10 months, as opposed to 12 to 18. Your Honor, the explanation is on the record. I point the court to page 80, appendix 79, where the prosecutor specifically asked the court that if, to make a finding, which is what the court then responded to at the very end, but the, and the request was to make a finding that if it turned out that he were a grade, that it was a grade B violation under the guidelines, this court should vary upward under the 3553A factors because the reality of this case is that this was a very violent offense and that the court should treat it as such under the 3553A factors. So in context, it is clear that when, at the end of the hearing, when the court said, yes, the guidelines are not, basically are not material to my analysis, the court was using the reasoning that the prosecutor provided to it, which provided to the court, which was that it should vary upward under the 3553A factors because this case was a truly violent offense. And that's the reasoning that the court said that it did not, that the guideline did not matter in this case because this was a truly violent offense and the court did not have to import into a sentencing analysis an area of the law that this same court has recognized may lead to counterintuitive results. That's the reason why the court found that the guideline was immaterial in this case. Counsel, there's another issue that was, it's raised in the briefs and that goes to the basis for the second supervised release violation, whether it was a technical violation or whether it involved a finding that the defendant had been engaged in further criminal conduct, namely drug trafficking. I am, I am confused about exactly what the government told the court on that issue and when it told it. My impression is that the government did suggest that that second, let me just finish. You're already shaking your head. I understand that. I'm sorry. Did suggest that the second supervised release violation was based on an allegation that he had been involved in criminal conduct based on an admission that he made to probation. There was an objection to that. The government then seemed to step back from that and then say, no, no, we're not saying that he was involved in criminal activity. He was, he was in the company of people who were involved in criminal activity and that was the probation violation. Is that, is that how it ended up and did that happen before the court announced its sentence or after the court announced its sentence? Yes, importantly, your honor, that was, I believe your honor is talking about a matter related to the first revocation, whether the defendant committed criminal conduct. I thought it was the second, but whatever. Yes. Importantly, your honors, may I, I would like to address this point, your honors, with the court's indulgence and also talk about the point you made about whether it was before or after it involves the standard of review, which this court should be aware of. Importantly, the defense did not raise, this is a factual objection, your honor, and the error occurred. They did not object. The defense counsel kept the objection in his pocket. When the prosecutor made a summary of what had, of the facts of the first revocation, the defense attorney kept his objection in his pocket, even though he had at least two times to address it. And then the court even went back to chambers, took a 19 minute recess to process all of the facts that were before it and make a reasoned decision. The court came back, still no objection from the defense. The court finally imposes sentence, sentences him to the stat max, 36 months. And then afterwards, the defense makes two objections. One was to the grade A violation and the other was a general objection to the procedural and substantive reasonableness of the sentence. And then almost as an afterthought, argues that the government had said that the defendant had committed criminal conduct during the first revocation and that he planned to object to that. So that was actually what the defense attorney said. And it was after the court had even sentenced him. And explained that sentencing rationale did not refer to this assertion that he had been involved in further criminal conduct involving one of the supervised release violation. Of course, said nothing about that. Is that correct? That is correct, Your Honor. And we respectfully submit that this matter was not preserved. What the defense is asking this court to do is to adopt a procedural rule that says that a defendant or any party by that matter doesn't have to object contemporaneously when an error occurs at sentencing, but actually can keep those objections until after the court imposes sentence and then lay out the objections. And Your Honors, this is inconsistent with the contemporaneous objection rule. And it's inconsistent with the Supreme Court's opinion in pocket. In pocket, the Supreme Court specifically stated the reasons for the objection, contemporaneous objection rule. And the court said, and I quote, the rule prevents a litigant from sandbagging the court remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor. And the court said more. It said that requiring the objection means that the defendant cannot gain the system waiting to see if the sentence later strikes him as satisfactory and then seeking a second bite at the apple. And when the court focused on whether there had been an unpreserved claim, the court did not focus on whether at the end of the hearing after the defendant had already been sentenced, whether there had been an objection. No, the court said, importantly, at no time during the exchange. And the exchange was the moment when the prosecutor breached the plea agreement. Thank you. Thank you, Counsel. Thank you, Your Honors. Attorney for Appellant, please come up. Reintroduce yourself on the record. You have a two-minute rebuttal. Good morning again, Your Honors. May it please the Court, F.P. Samuel Carrion on behalf of Xavier Maldonado Negroni. I do want to address the sentencing court's failure to adopt the government's rationale that the guidelines of the greater violation was totally irrelevant. The comment that the defendant's reasoning has problems in that regard was the proffer that the 12-month sentence was appropriate. There was never any explicit comment that the guidelines were completely irrelevant. Also, there's an anchoring effect. Courts have noted there is an anchoring effect regarding guidelines. This case, even in McGee, which is a 2011, this court in McGee, 2011, there was a designation of the defendant as a career offender. And even though there was a significant downward variance, the court still found that that designation was influential. And I submit that a grade A tag of a- Counsel, here, the government did argue throughout that it should be the maximum given the seriousness of the offense. So how do we determine whether the anchoring was the guideline determination or whether the court adopted the government's position that the seriousness of the offense merited the maximum sentence? Well, Your Honor, I think this is where we run into the problem of the lack of a clear statement. And if we don't have that clear statement, then the court cannot presume the harmlessness. And so without the government making- I'm sorry, without the district court making that comment and expounding upon its rationale, I don't think the court can presume that the guidelines had no- So we're not- We can't, in the absence of what you would say was a clear statement, although that's questionable, but we can't, in deciding whether there's prejudice, we can't draw a reasonable inference from the record, everything that happened, all the things we've been talking about. You're saying there is this clear statement rule, which precludes the process of inference on the issue of prejudice. Is that your position? Your Honor, and I do see that I'm out of time, but I do want to address this. I don't think it would completely preclude, but I think when courts were confronted with similar statements, these, for lack of a better word, boilerplate assertions, conclusory assertions that the guidelines just didn't matter, I think that is not enough. And I think in this case, this is what we have. And is the idea, because we have case law that says we can infer the harmlessness of all kinds of errors by looking at the record as a whole. That's generally what we do. And I guess is the difference here that the only source of the harmlessness, there is a basis for finding harmlessness, is the words of the district judge. And that being the case, maybe we want the district judge to be relatively clear if that's going to be the basis for it, rather than just doing a general hunting. Because if the judge hadn't said this, I take it there'd be no argument that it was harmless. Right? In other words, if the judge had said nothing, and then just imposed the 36-month sentence, we wouldn't infer, oh, that's probably harmless, because on this record, without the judge having said anything, that's fine. So the only thing that's tipping it to be harmless is the words of the judge himself. So I guess in that instance, you read our cases to say, if that's what's going to tip it, the words better be pretty clear. Right. And also context matters. That wasn't a sua sponte explanation. That was prompted by the prosecutor in an attempt to inoculate the rationale. And I do want to, if I can just address one quick point about the government's argument. The government did argue that this was a grade A. The government argued it was a grade A. In fact, it cited a case, Diaz-Marcano, which was a case that the district court itself had issued, where it found 3.1 and 3.2 to be crimes of violence. So not only, yes, it did argue 36 months should be the sentence, but on the other side of the fence, it did also argue, but this is a grade A violation. And I know that I'm out of time, but if I can address the allegation. I just have one more question. Yes. Once the district court imposes sentence and says, this is what I'm going to give you, at that point, the court can't change the sentence anyway. So if the prosecution says, by the way, would you have done this anyway? Regardless, the court couldn't change the sentence. Right? Certainly, the court, I think if the sentence hadn't concluded, if the sentencing hearing hadn't concluded, perhaps it could have, but it also could have explained a little bit more as to why that proposition, as proposed to it, was in fact correct instead of a conclusory, yes, the guidelines didn't matter. Well, the whole purpose of contemporaneous objection is that it gives the court a chance to correct an error. And it's always struck me as just odd that our case law says, you've got to make a procedural and substantive objection, and you don't know what to object to until the sentence is actually imposed. But at that point, the court can't change it anyway. And just like the government makes, it's that court can't do anything about it. Just struck me, it's just always struck me as being odd that we place this kind of burden. I take your point, Judge Thompson. And if I could just very quickly respond to the argument that there was some type of sandbagging or the objection as to the allegations of new criminal conduct. To be clear, that first came out before the sentence was pronounced. It was part of the government's advocacy for the 36-month sentence. It appears in docket entry 2004, which was a probation officer's motion. But ultimately, the finding of revocation was based on failure to answer questions truthfully engaging in criminal conduct with other people and an employment condition, grade C technical violations. Now, of course, the objection was to the extent that the court relied on this information in its sentencing calculus. And the Puckett case that the government cites, that was a case where there was no objection made whatsoever at the sentencing hearing. And so, of course, the concerns for sandbagging were there. But in this case, the court, it was brought to the court's attention that this was a problematic allegation. The court could have said, I didn't consider it. The court could have said, I considered it. This is why I believe that this was reliable, but we just don't have anything. And so, with that in mind, Your Honor, I'd ask that the court find that this was not harmless error as to the guideline calculation, that the sentence was insufficiently explained given the 26-month upward variance, and that there should have been some clarification in the record as to whether the district court relied on this allegation and how it found that it was reliable. Thank you. Thank you both for your arguments. Thank you. Thank you, counsel. That concludes arguments in this case.